# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
_____

### No. 98-50232
_____

BETTY SUE CASPER, individually and as next friend of Jared and Clinton Casper,

                                        Plaintiff-Appellee,

versus

CITY OF LAGO VISTA; BART TUREK; FRANK W. MILLER; et al.,

                                        Defendants-Appellants.

_____

### Appeal from the United States District Court
### for the Western District of Texas
### (A-97-CV-716)
_____

March 17, 1999

Before REYNALDO G. GARZA, POLITZ and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

The City of Lago Vista, its police chief, Frank Miller, and one of its police officers, Bart Turek, contest the denial of qualified immunity in an action arising out of Officer Turek's response to Betty Sue Casper's interference with the arrest of her husband. No material fact issues exist for whether the Officer's response, or his hiring, training, retention and supervision by Chief Miller and the City, were objectively unreasonable in light of clearly established federal law, or not within the scope of the authority of Chief Miller and Officer Turek and in good faith in

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

light of state law.  We **REVERSE** the denial of summary judgment on all claims except the federal law claim against the City and **REMAND.**

I.

The following facts are taken from the police reports of Officer Turek and his partner, Officer Scott Orrison, and the affidavit of Betty Sue Casper.  For the facts concerning the incident, these three accounts constitute the entire summary judgment record.  None of what follows is in dispute.

In August 1997, pursuant to a warrant, Officers Turek and Orrison proceeded to the house where the Caspers resided in Lago Vista, Texas, to arrest Edward Casper for criminal failure to pay child support.  Officer Turek began to read Mr. Casper his *Miranda* warnings while Officer Orrison handcuffed him.  Mrs. Casper then emerged from the house and demanded to see the warrant.  Told by the Officers to return inside, Mrs. Casper instead stepped between Officer Turek and her husband, asking again to see a warrant.

Unsatisfied with Officer Turek's response, Mrs. Casper raised her hand toward him to get his attention.  In response, Officer Turek grabbed her arm and attempted to restrain her; as Mrs. Casper and the Officer struggled, she was thrown through a flower bed against a parked vehicle.

During this incident, Mr. Casper asked his wife several times to stop.  When Mrs. Casper was out of the way, Officer Turek maintained his distance from her.

2

Chief Miller, by affidavit, opined that the Officers' actions were reasonable, noting that arrests are historically volatile circumstances during which police officers are in particularly acute danger. In that affidavit, Chief Miller also reviewed Officer Turek's work history.

Officer Turek graduated from the City's Police Academy in May 1994, and was hired the next month by the City as a reserve officer. In this position, he worked at least 16 hours each month, usually riding with a more experienced officer. From March 1995 to September 1997, the Officer worked for the City as a certified police officer. Police officers for the City are required to be fully certified peace officers as set out in the Texas Commission on Law Enforcement Officers Standards and Education.

Keith Campbell, who has worked in police recruiting for the Austin Police Department, filed an affidavit on Mrs. Casper's behalf, stating that he would not have hired Officer Turek because the Officer had: changed jobs frequently; failed two of three psychological tests at the Austin Police Department; applied unsuccessfully to several other police departments; and omitted information on his employment form.

Finally, Mrs. Casper filed the City's Police Department Regulations, Policy and Procedure (the Manual) in the summary judgment record. The Manual requires that officers "shall not use more force than is necessary for the safe custody of a prisoner or for overcoming any resistance that may be encountered", and places the Chief of Police in charge of the policies.

Mrs. Casper filed this action in Texas state court within a week of the incident, presenting claims under 42 U.S.C. § 1983 and state law on her own behalf and on behalf of her two children, who *may* have seen the incident. The action was removed to federal court.

The City, Chief Miller, and Officer Turek moved for summary judgment, claiming qualified immunity for the federal and state claims. Mrs. Casper did not move, pursuant to FED. R. CIV. P. 56(f), to suspend a ruling on summary judgment pending discovery. The district court denied summary judgment.

## II.

Denials of summary judgment on qualified-immunity grounds are appealable 28 U.S.C. § 1291 "final orders" when based on an issue of law. *E.g.,* **Mitchell v. Forsyth**, 472 U.S. 511, 526 (1985). While some types of fact issues pertinent to summary judgment, such as the sufficiency of evidence identifying officers*,* are not subject to interlocutory appeal in this context, *see* **Johnson v. Jones**, 515 U.S. 304, 313 (1995), the issue "whether the conduct as alleged violated a clearly established statutory or constitutional right of which a reasonable person would have known" may be appealed. **Cantu v. Rocha**, 77 F.3d 795, 803 (5th Cir. 1996). Likewise, a federal district court's denial of state law qualified immunity is also immediately appealable when based on an issue of law. **Id.**

For such an interlocutory appeal, we will not, however, review issues not related to the denial of qualified immunity. As in

*Cantu*, we decline to exercise "pendent appellate jurisdiction" over issues not "inextricably intertwined or necessary to resolution of the qualified immunity issue". *Id*. at 805. Because municipalities are not entitled to qualified immunity against claims under federal law, *e.g.*, **Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit**, 507 U.S. 163, 166 (1993), we have no jurisdiction over the City's appeal on the § 1983 claim.

A.

Qualified immunity analysis asks first, whether the plaintiff alleges a violation of clearly established law; if the plaintiff has, an officer has qualified immunity if it is objectively reasonable that the officer's conduct did not violate clearly established law as of the time of the incident. *E.g.*, **Stefanoff v. Hays County, Tex.**, 154 F.3d 523, 525 (5th Cir. 1998).

Of course, we review the denial of summary judgment *de novo*. *E.g.*, **Colston v. Barnhart**, 130 F.3d 96, 99 (5th Cir. 1997). Such judgment is proper if the items in the summary judgment record "show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c).

Mrs. Casper claims that: Officer Turek used excessive force, intentionally inflicted emotional distress upon her and her children, and assaulted and battered her; Chief Miller and the City inadequately trained and supervised, and negligently hired and retained, Officer Turek, and developed and maintained facially unconstitutional regulations, as contained in the Manual.

1.

"*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Mrs. Casper was not being arrested; however, a Fourth Amendment seizure occurs "when government actors have, 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen'", *id.* at 386 & n.10 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 & n.16 (1968)).  Because such a restraint occurred here, we apply the Fourth Amendment standard. *See also* *Ikerd v. Blair*, 101 F.3d 430, 433 & n.6 (5th Cir. 1996) (girl whose arm was grabbed by a police officer during her father's arrest was "seized" for Fourth Amendment purposes).

A Fourth Amendment excessive force claim exists if a plaintiff shows she (1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable. *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998).

Mrs. Casper claims, first, that no force was required; and second, that even if some force was needed, Officer Turek's use of force was excessive.  We disagree.

a.

6

Taking Mrs. Casper's affidavit as true, as we must for our summary judgment analysis, Officer Turek was reasonably apprehensive upon being physically confronted by an arrestee's current wife during his arrest for domestic matters concerning his prior marriage.  Mrs. Casper freely admits disobeying the Officers, standing between Officer Turek and her husband, and raising her hand toward the Officer.  She claims no intent to strike or harm him; yet, there is no material fact issue that his immediate defensive response was not reasonable.  "[N]o right is guaranteed by federal law that one will be free from circumstances where he will be endangered by the misinterpretation of his acts." ***Young v. City of Killeen, Tex.***, 775 F.2d 1349, 1353 (5th Cir. 1985).

Judicial notice can be taken of the fact that domestic situations are fraught with danger for a police officer.  Moreover, Mrs. Casper presents no evidence to counter Chief Miller's assessment of the danger inherent in arrest situations.  Accordingly, there is no material fact issue whether Officer Turek's decision to *use force* was objectively reasonable in light of established law.

b.

Regarding the *excessiveness of force*, Mrs. Casper does not present a material fact issue whether Officer Turek's force was disproportionate to the need.  The Officer was reasonably apprehensive upon being physically confronted in the course of an arrest. Because even a small person's physical aggression can divert attention while, for instance, another person draws a gun,

7

it was reasonable for the Officer to quickly remove Mrs. Casper from the immediate proximity of the arrest.

No summary judgment evidence suggests that the Officer's conduct was clearly excessive relative to this need. He neither struck Mrs. Casper a second time nor drew a weapon; instead, he established distance as soon as possible. Uncontradicted evidence indicates that Mrs. Casper's husband and Officer Orrison viewed her as resisting Officer Turek during the struggle. No evidence exists of Officer Turek using force beyond that necessary to remove Mrs. Casper from her posture of interference with the arrest.

Mrs. Casper lays stress upon the allegations in her pleadings that Officer Turek's force was "great" and "unreasonable", and particularly on his action being done "violently" and "brutally". She contends that this language establishes a material fact issue for trial. Of course, summary judgment evidence must go beyond the pleadings. FED. R. CIV. P. 56 (e); *e.g.*, **Stults v. Conoco, Inc.**, 76 F.3d 651, 656 (5th Cir. 1996). Moreover, even had such descriptions appeared in Mrs. Casper's affidavit, such conclusory assertions would raise no material fact issue. *E.g.*, **Lechuga v. Southern Pacific Transp. Co.**, 949 F.2d 790, 798 (5th Cir. 1992).

### c.

Finally, no summary judgment evidence exists of any injury to Mrs. Casper. This circuit's prior "serious injury" requirement for a Fourth Amendment excessive force claim has been modified in the light of the Supreme Court's Eighth Amendment holding in **Hudson v. McMillian**, 503 U.S. 1, 4 (1992). *See* **Spann v. Rainey**, 987 F.2d

**8**

1110, 1115 & n.7 (5th Cir. 1993); *Ikerd,* 101 F.3d at 434 & n.7. However, our court still requires "at least some injury" to support a Fourth Amendment excessive force claim. *Id.* at 434.

In sum, Mrs. Casper fails to create a material fact issue for each of the three prongs for showing excessive force. Accordingly, summary judgment is required on that claim.

2.

Mrs. Casper conceded at oral argument that, if Officer Turek has qualified immunity on the excessive force claim, then claims against Chief Miller and the City for improper hiring, training, retention, and supervision of Officer Turek and for the policy in the Manual would be meritless. A waiver at oral argument is binding. *E.g.*, *U.S. v. Amaya*, 111 F.3d 386, 388 & n.3 (5th Cir. 1997). Therefore, we need not discuss these issues.

B.

Concerning Mrs. Casper's state law claims against Officer Turek, Chief Miller and the City for intentional infliction of emotional distress, assault and battery, and negligent hiring, Texas' qualified immunity law is substantially the same as the federal standard. *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997). Accordingly, there is immunity from suit for state government officials for matters arising from the performance of their discretionary duties, as long as they are acting in good faith and within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

1.

Mrs. Casper conceded at oral argument that the intentional infliction of emotional distress claims for her and her children were meritless.

2.

The predicate state law for assault and battery and for negligent hiring, regarding which officers must act in good faith and within their authority to be afforded qualified immunity under Texas law, differs from the Fourth Amendment predicate regarding which they must be objectively reasonable to be afforded such immunity under § 1983. However, Mrs. Casper's brief articulates no distinct standard for these state tort claims. Of course, failure to brief and argue an issue constitutes waiver. *E.g.*, ***Applewhite v. Reichhold Chemicals***, 67 F.3d 571, 573 (5th Cir. 1995). Given our disposition of the federal claims, summary judgment is proper on the remaining state claims as well.

C.

As noted, the City has no qualified immunity under federal law. But, under the Texas Tort Claims Act, it is entitled to immunity under Texas law if, as they are here, its officers are immune. ***City of Houston v. Kilburn***, 849 S.W.2d 810, 812 (Tex. 1993).

III.

Accordingly, the denial of summary judgment for Officer Turek and Chief Miller on all claims, and for the City of Lago Vista on the state law claims, is **REVERSED**; and this case is **REMANDED** for entry of appropriate summary judgments in this regard, and for

further proceedings, consistent with this opinion, on the remaining federal law claim against the City.

*REVERSED and REMANDED*